■   THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. MAZIE LANCASTER, Appellant.— Judgment of the County Court, Westchester County, rendered September 2, 1970, affirmed. No opinion. We have reviewed the order of the same court dated April 2, 1969, which, after a hearing, denied defendant's motion to suppress evidence seized under a search warrant and the follow-

ing decisions of said court: one rendered May 15, 1970, denying defendant's motion to suppress an admission, after a hearing, and another rendered September 8, 1971, settling the record on appeal. Latham, Acting P. J., Gulotta and Brennan, JJ., concur; Shapiro, J., dissents and votes to reverse the judgment, grant defendant's motion to suppress the admission, and order a new trial, with the following memorandum, in which Christ, J., concurs: Defendant has been convicted of the crimes of promoting gambling in the second degree and possession of gambling records in the second degree. On the morning of February 2, 1968 eight police officers armed with a search warrant authorizing a search of premises located at 108 Brookfield Street, White Plains, and a search of "persons present on said premises" for "paraphernalia used in connection with maintaining a policy game and lottery", entered those premises — a candy store. The only persons present were defendant and one Charles Redd. Police Lieutenant Seit testified at the *Huntley* hearing that when the officers entered the store they had a search warrant. He then "asked her [defendant] who was in charge there." Defendant replied, "I'm in charge. Let me see that search warrant." She was not advised of her rights pursuant to the requirements of *Miranda* v. *Arizona* (384 U. S. 436) until the search of the premises had been substantially completed. Lieutenant Seit testified that at the time the officers entered the store defendant was not free to leave and that had she attempted to do so she would have been restrained. He further testified that he was aware that possession was the key element in those crimes charged under the gambling statutes with respect to policy and in this belief he was correct (see *People* v. *Wolosky*, 296 N. Y. 236; *Cimmino* v. *State of New York*, 29 A D 2d 587). At the conclusion of the *Huntley* hearing the court held, with respect to defendant's admission: "[T]his was not part of an interrogation and custody, because the defendant had no right to look at or read the search warrant unless she had some authority in the premises, and the officer had a perfect right legally to ask her who was in charge before he let her read the search warrant." I disagree. The question of whether defendant had been in charge of the premises — in which a great many gambling records had been found — was a key issue at the trial. At the trial, she claimed she had gone to the store to purchase a package of Kotex. She agreed to remain there when the proprietor said he had to go out for a minute "to go see something about his car." The necessary element of possession was supplied only by the admission made to Lieutenant Seit. As the warrant authorized the search of all persons present in the store, it is not at all clear that defendant had no right to examine the warrant in the absence of an admission of authority. In any event, the posing of that issue begs the real question. Defendant's admission was made in response to a police officer's question, one designed to elicit an admission as to the key element of a crime which the officers had reasonable ground to believe had been committed. The presence of eight police officers in the store would certainly have led a reasonable person to believe he had been deprived of his freedom of action in a significant way (cf. *People* v. *Rodney P.*, 21 N Y 2d 1, 9). Under these circumstances it was improper to seek to elicit an admission before warning the persons present of their rights. I also note an instance of improper conduct at the trial by the prosecutor. During the cross-examination of Lieutenant Seit, William Jones (one of the persons named in the search warrant) was described as a person "involved in the policy business." Thereafter, during his cross-examination of defendant the prosecutor asked whether she was a good friend of William Jones. She said he was not a good friend and that he was simply someone she knew. The prosecutor asked whether Jones had been "the guarantor on your bond when you were arrested." She said, "No", and then indicated she

did not know who the guarantor had been. The People then offered the bond in evidence. Upon objection the offer was withdrawn. During his summation the prosecutor referred to William Jones as the guarantor of defendant's bail bond. Upon objection, he withdrew his comment and then proceeded to argue that it was implausible that defendant could actually have been unaware of the identity of the guarantor. These remarks were totally uncalled for and were an obvious attempt to prove defendant's guilt through her association with Jones.